35492. ROLAND, *alias* ROWLAND, *v.* THE STATE.

CARLISLE, J. The defendant was tried, convicted, and sentenced to serve from two to three years in the penitentiary under an indictment for

burglary, in which it was charged that the defendant did "with force and arms, unlawfully, burglariously and feloniously break and enter into the dwelling house of Julia Mae Bonner and Willie Bonner with intent to commit a larceny therein, and the said Paul Roland, alias Paul Rowland, then and there, after having broken and entered said house, as aforesaid, did wrongfully, feloniously, fraudulently and privately take and carry away from said dwelling house with intent to steal the same one $5.00 bill, five $1.00 bills, in money of the United States of America; one chase man's wrist watch with gold metal band of the value of $45, the same being then and there the property of Julia Mae Bonner and Willie Bonner and being then and there in said dwelling house contained and stored." The defendant's motion for new trial, based on the usual general grounds and three special grounds, was denied, and he has brought the present writ of error to have that judgment reviewed.

1. From the evidence adduced on the trial and the defendant's statement, it appears that, on the night before the day of the alleged burglary, an altercation of some description occurred at the home of the defendant's mother and stepfather, which resulted in gunfire and the mother being hospitalized in Macon and the stepfather being incarcerated the same night. On the day of the alleged burglary, the defendant went to a house directly across the road from that of his parents and, finding a man who lived with his parents, inquired of his mother and asked the man to go with him to his parents' home, which the man did. The defendant found the door to his parents' home locked, but discovered that one of the windows was opened and entered the house by removing, or breaking out the screen to the window. Once inside, he looked about the house and, seeing his mother's pocketbook lying on a bed, he opened it and took $10 in bills and a wrist watch with the intention, he says, of using the money to go to Macon to see his mother and of turning the watch over to her. The man who lived with the defendant's parents did not enter the house at that time or give the defendant permission to do so. When the defendant left his parents' house, he returned to the house across the road where he had found the man who lived with his parents and stayed there a short time before returning to Eatonton. In Eatonton he went to the home of a kinsman, whom he tried to induce to take him to Macon to see his mother. It was while he was at the home of his kinsman that he was arrested by the sheriff of the county for breaking and entering his parents' home. When asked what he had taken from the house, the defendant delivered the money and watch to the sheriff voluntarily. It does not appear at whose instigation the arrest was made. The sheriff simply testified that he had a call to arrest the defendant for breaking into the house. It seems highly unlikely that the call was made by the mother in the hospital in Macon or the stepfather in jail in Eatonton. The money unquestionably belonged to the defendant's mother, and while there was evidence that the stepfather had, prior to the trial, said that the watch belonged to him, on the trial he denied that he owned the watch and testified that he had purchased it and given it to the defendant's mother. The stepfather also testified that the defendant's removal of his mother's personal effects from the house was unobjectionable to him and he had no reason for wishing to prosecute the defendant, who was a good boy

so far as he knew. There was evidence that, when the defendant visited the mother in the hospital, she told him that it was all right for him to have taken the money and watch from the house. While there was evidence that the defendant was not living with his parents at the time of the alleged burglary, there was no evidence of what the parents' attitude was concerning his privilege as a child in going and coming in the home, nor was there evidence that his parents had ever forbidden him the premises.

"While it is true that, 'where larceny is charged and a *taking* [italics ours] is shown, the jury must necessarily be the exclusive judges of the intention which actuated the accused in the asportation' (*Adams* v. *State*, 12 *Ga. App.* 808, 78 S. E. 473, and cit.), it is still incumbent on the State to show that the taking was without the consent of the owner." *Felder* v. *State*, 60 *Ga. App.* 643 (4 S. E. 2d 716). This rule is equally applicable to burglary where it is charged that the accused broke and entered a dwelling house with the intent to commit a larceny of certain described property. While the defendant readily admitted the breaking and entering and the taking of the described articles, from which admission the jury might ordinarily be authorized to infer that the accused committed these acts with intent to steal, yet, under the peculiar circumstances of this case, we think such an inference was unauthorized. In view of the relationship of the defendant to the owners of the premises and property, that of parents and child, and in view of the status of the parents, the mother in the hospital and the stepfather incarcerated, we think the condonation by the parents of the defendant's action establishes at least an implied consent to his action, and that, far from intending to commit a larceny, the defendant did what he thought his mother would have expected of him under the circumstances. Since no larceny was established by the evidence, the nonconsent of the parents not having been proved, no burglary could be established, and the verdict was consequently contrary to the evidence.

2. As the evidence was insufficient to support the verdict, and, unless the State can produce evidence materially different from that in the present case, there will be no further trial of the defendant; the special grounds of the motion for new trial, which are without merit, will not be discussed in detail.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*

DECIDED JANUARY 27, 1955.

*R. C. Whitman, Milton F. Gardner,* for plaintiff in error.
*George D. Lawrence, Solicitor-General,* contra.